**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

_____

REBECCA MCNEIL, *et al.,*

        Plaintiffs,

        v.

MOUNT CARMEL HEALTH SYSTEM,
*et al.,*

        Defendants.

_____

Civil Action No.: 2:20-CV-258 (EAS/KAJ)
Judge: Hon. Edmund A. Sargus, Jr.
Magistrate Judge: Hon. Kimberly A. Jolson

**NOTICE OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

Pursuant to Fed. R. Civ. P. 37, upon the December 24, 2020 Memorandum of Law, the December 24, 2020 Declaration of Robert Landy and the exhibits thereto, Plaintiffs, by and through their attorneys Ford O'Brien LLP and Graff & McGovern LPA, hereby move this Court for an Order to compel Defendants to respond fully to discovery requests propounded by Plaintiff.

Respectfully submitted,

*/s/ Robert S. Landy*
FORD O'BRIEN LLP
Robert S. Landy
Anjula S. Prasad
575 Fifth Avenue
17th Floor
New York, New York 10017
rlandy@fordobrien.com
(212) 265-1047

GRAFF & McGOVERN, LPA
Douglas Graff, Esq. (0013222)
604 East Rich Street
Columbus, OH 43215
(614) 228-5800
Doug@grafflaw.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

_____

REBECCA MCNEIL, *et al.,*

        Plaintiffs,

        v.

MOUNT CARMEL HEALTH SYSTEM,
*et al.,*

        Defendants.

_____

Civil Action No.: 2:20-CV-258 (EAS/KAJ)
Judge: Hon. Edmund A. Sargus, Jr.
Magistrate Judge: Hon. Kimberly A. Jolson

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION TO COMPEL DISCOVERY**

FORD O'BRIEN LLP
Robert S. Landy
Anjula S. Prasad
575 Fifth Avenue
17th Floor
New York, New York 10017
rlandy@fordobrien.com
(212) 265-1047

GRAFF & McGOVERN, LPA
Douglas Graff, Esq. (0013222)
604 East Rich Street
Columbus, OH 43215
(614) 228-5800
Doug@grafflaw.com

*Attorneys for Plaintiffs*

December 24, 2020

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................ii-iv

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..................................................................................................................................3

    I.    Defendants' Peer Review Privilege Objections Do Not Apply .................................3

        A.  The Peer Review Privilege Does Not Apply in Federal Question Litigation .........3

        B.  Even if the Peer Review Privilege Applied Here, Documents Requested by
            Plaintiffs Are Not Subject to Such Privilege .............................................................5

    II.   Defendants' Remaining Privilege Objections Largely Do Not Apply ...................8

        A.  Work Product Doctrine Is Not an Absolute Immunity and Cannot Prevent
            Discovery into the Investigation at Issue in this Action .........................................8

        B.  Attorney-Client Privilege and Work Product Do Not Apply with Respect to
            Certain other Categories of Documents ...................................................................9

            1.  Attorney-Client Privilege .........................................................................9

            2.  Work Product ...........................................................................................13

CONCLUSION ............................................................................................................................18

i

## TABLE OF AUTHORITIES

*Atteberry v. Longmont United Hosp.*,
    221 F.R.D. 644 (D. Colo. 2004) .................................................................................4

*Bansal v. Mount Carmel Health Systems, Inc.*,
    10th Dist. No. 09AP-351, 2009 Ohio 6845 ...............................................................6

*Berger v. Central Vt. Ry.*,
    8 F.R.D. 419 (D. Mass. 1948).................................................................................14

*Burrows v. Redbud Cmty. Hosp. Dist.*,
    187 F.R.D. 606 (N.D. Cal. 1998)..............................................................................4

*Columbia/HCA Healthcare Corp. Billing Practices Litig.*,
    293 F.3d 289 (6th Cir. 2002) .................................................................................13

*Fausek v White*,
    965 F.2d at 129 .......................................................................................................13

*Guinn v. Mount Carmel Health Systems*,
    Case No. 2:09-cv-0226, 3 (S.D. Ohio Jul. 23, 2010)................................................4

*Giusti v. Akron Gen. Med. Ctr.*,
    178 Ohio App.3d 53, 2008-Ohio-4333 .....................................................................6

*Guy v. United Healthcare Corp.*,
    154 F.R.D. 172 (S.D. Ohio 1993)..............................................................................8

*Hancock v. Dodson*,
    958 F.2d 1367 (6th Cir. 1992) ..................................................................................4

*In re Department of Justice Subpoena Duces Tecum to Custodian of Records for Baptist Memorial Hosp.*,
    2004 WL 2905391 (W.D. Tenn. June 22, 2004) ......................................................4

*In re Powerhouse Licensing*,
    441 F.3d at 438 .......................................................................................................13

*In re Prof'ls Direct.*,
    578 F.3d at 439 .......................................................................................................15

*Lowrey v. Fairfield Med. Ctr.*,
    5th Dist. No. 08 CA 85, 2009-Ohio-4470.................................................................6

*Manley v. Heather Hill, Inc.*,
    175 Ohio App.3d 155, 2007-Ohio-6944 ....................................................................6

*McCall v. Procter & Gamble Co.*,
    No. 1:17-CV-406, 2019 WL 3997375 (S.D. Ohio Aug. 22, 2019) .........................13

*M.H. v. Akron City Sch. Dist. Bd. of Educ.*,
    No. 5:18-CV-870, 2019 WL 4346274 (N.D. Ohio Sept. 12, 2019).........................13

*Newell v. Capital Transit Co., D.C.D.C.1948*,
    7 F.R.D. 732 ..........................................................................................................14

*Panella v. Baltimore & Ohio R. Co.*,
    14 F.R.D. 196 (N.D. Ohio 1951) ...........................................................................14

*Reed v. Baxter*,
    134 F.3d 351 (6th Cir. 1998) .................................................................................13

*Selby v. Fort Hamilton Hosp.*,
    12th Dist. No. 2007-05-126, 2007-Ohio-2413 .........................................................6

*Scourtes v. Fred W. Albrecht Grocery Co.*,
    15 F.R.D. 55 (N.D. Ohio 1953) .............................................................................14

*Smith v. Manor Care of Canton, Inc.*,
    5th Dist. No. 2005-CA-00100, 2006-Ohio-1182 ......................................................6

*Nilavar v. Mercy Health System*,
    210 F.D.R. 597 (S.D. Ohio 2002) ............................................................................4

*United States v. Roxworthy*,
    457 F.3d 590 (6th Cir. 2006) .................................................................................15

*Viront v. Wheeling & Lake Erie R. Co., D.C.N.D. Ohio 1950*,
    10 F.R.D. 45 ..........................................................................................................14

*Ward v. Summa Health System*,
    128 Ohio St.3d 212, 2010 Ohio 6275 ......................................................................6

Statutes/Rules:

Fed. R. Civ. P. 26(b)(3)(A)(i), (ii) .................................................................................9

R.C. 2505.25(E)(1) .......................................................................................................16

Section 43(e) of the Lanham Act, 15 U.S.C. § 1125 ................................................3, 5

**PRELIMINARY STATEMENT**

Plaintiffs respectfully request the Court's assistance in moving discovery in this matter forward. After negotiation, the parties have concluded that there are substantial legal disputes regarding the Defendants' assertions of privileges and immunities from discovery that require judicial resolution.

As this Court is aware, this is one of many litigations relating to persons and entities in connection to Dr. William Husel, a physician who was accused of ordering "excessive" and "fatal" doses of medication to patients as they died. This case is brought by Defendants' former employees who allege Defendants wrongly fired them, purportedly in connection with care that they provided to patients (but in fact for other impermissible reasons), and then engaged in a campaign of public statements and press releases touting a supposedly thorough "investigation" that distanced the Defendants and their management from the events at issue, and created the deliberate false impression that the high dosages were the result of a rogue doctor and specific members of the Mount Carmel staff (including Plaintiffs here) that assisted the doctor in ways that violated policies and concealed misconduct.[1] Though the case is complex, the two most critical issues in it are (1) the propriety of the care that was provided to the patients at issue; and (2) whether that care was actually and correctly assessed during the "thorough" investigation, which publicly laid blame with Dr. Husel and the Plaintiffs. But Defendants have employed objections, most notably the state-law peer-review privilege and the work-product doctrine, to prevent all discovery whatsoever into either the care provided or the investigation that followed.

Plaintiffs are ten former employees of Mount Carmel Hospital West, nine nurses and one pharmacist, who brought this case against their former employers, Defendants Mount Carmel

---

[1] Exhibit A to the Declaration of Robert S. Landy submitted herewith is a compilation of Defendants' references to their investigation in public press releases.

Heath System and Trinity Health Corporation, for making ruinously false statements regarding their patient care and alleged violations of applicable policies. Specifically, Defendants made publicly false statements by announcing to the world that one of its physicians, Dr. William Husel, with the assistance of a "small number of people who made poor decisions" by carrying out Dr. Husel's orders, administered "fatal" dosages of the pain medication fentanyl to 27 patients, and administered "excessive" dosages to 8 more. Between January 14, 2019 and July 11, 2019, Defendants doubled down on these statements, and repeatedly publicly referred to the care these patients received as a "tragedy." By the end of July 2019, Plaintiffs, the "small number of people" referred to by Defendants, had all been terminated from their positions and publicly vilified, and the doctor had been indicted for twenty-five counts of murder. But in fact, there was no tragedy in that care. Each of the 35 patients at issue received compassionate pain relief during terminal extubation, the removal of aggressive life support measures that artificially supported respiration and heart function, that complied with all applicable hospital policies. The opioid-based medication provided pain relief during the final minutes or hours of these patients' lives and no patients were harmed by Plaintiffs' care. Defendants' false statements were a component of a false marketing campaign—designed to preserve Defendants' reputation as a leading voice combatting the national opioid crisis—which cast the events as compartmentalized incidents of Plaintiffs violating policies, correctable by firing the supposedly rogue elements.

Now Defendants refuse to produce documents regarding either the care Plaintiffs provided to those patients or the investigation referred to in the public statements made about such care. While Defendants indicate that they will produce a log of material withheld, to date, they have not done so.[2]

---

[2] On October 20, 2020, Dr. Husel's criminal defense attorneys filed a motion in the Common Pleas Court of Franklin County informing that Court that Defendants here, Mount Carmel and Trinity Health, had identified sixteen

## ARGUMENT

Fed. R. Civ. P. 37 permits a motion to compel discovery when a party refuses to answer an interrogatory submitted under Rule 33 or to produce documents as requested under Rule 34. In this case, Defendants Mount Carmel West and Trinity Health have refused to provide documents responsive to 50 of Plaintiffs' 55 requests on the basis of broad assertions of the state-law "peer-review" privilege as well as the attorney-work-product doctrine. While Defendants have also invoked the attorney-client privilege, those assertions are not yet ripe for judicial consideration. Rather than seek a document-by-document ruling, which would be a burdensome request, this motion seeks certain general rulings regarding the applicability of privileges, and the general discoverability of certain categories of records.

## I.    DEFENDANTS' PEER REVIEW PRIVILEGE OBJECTIONS DO NOT APPLY

### A.    The Peer Review Privilege Does Not Apply in Federal Question Litigation

Defendants assert the peer review privilege for 15 of Plaintiffs' requests—a state law privilege that does not exist under federal law. In addition to Plaintiffs' defamation and wrongful termination claims, Plaintiffs allege in their Complaint that Defendants' public relations campaign violated Section 43(e) of the Lanham Act, 15 U.S.C. § 1125, a claim under federal law. "The law in [the Sixth] Circuit is well settled that, in a federal question case, the existence of pendent state law claims does not relieve the Court of '[the] obligation to apply the federal law of privilege.' *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992)" *Guinn v. Mount Carmel Health Systems*, Case No. 2:09-cv-0226, 3 (S.D. Ohio Jul. 23, 2010).

---

additional patients who were given high doses of fentanyl by Dr. Husel, but who survived for several days after receiving the dose, and excluded those patients from their public statements as well as their disclosures to authorities. These additional cases support Plaintiffs' allegation here that in connection with providing comfort after the removal of life support, high dose pain relief may on average extend survival times as opposed to shortening them. Plaintiffs seek these records as well, including any discussions as to why the Defendants chose to disclose 35 cases where survival times were shorter, and exclude 16 where survival times were longer.

It is also well settled law in the Sixth Circuit and others that there is no physician peer review privilege under federal common law. After a lengthy analysis, the District Court in *Nilavar v. Mercy Health System* concluded that "federal common law has never adopted a physician peer review privilege, and a great weight of authority, as well as 'reason and experience,' militate against doing so []." *Nilavar v. Mercy Health System*, 210 F.D.R. 597 (S.D. Ohio 2002). *See also In re Department of Justice Subpoena Duces Tecum to Custodian of Records for Baptist Memorial Hosp.*, 2004 WL 2905391 (W.D. Tenn. June 22, 2004). This Court in *Guinn* explicitly affirmed Judge Rice's reasoning in *Nilavar* regarding defendants' (also Mount Carmel) issues of comity or confidentiality when considering the peer review privilege, reiterating that these issues did not "overcome Plaintiff's 'need for the information sufficient to prove [the plaintiff's] allegations." *Guinn v. Mount Carmel Health Systems* quoting *Nilavar* at 608. Finally, the fact that material may also be relevant to state law claims is no bar to production. *See, Atteberry v. Longmont United Hosp.*, 221 F.R.D. 644, 646-47 (D. Colo. 2004) ("[F]ederal law of privilege governs even where the evidence sought also may be relevant to pendent state law claims."); *Burrows v. Redbud Cmty. Hosp. Dist.*, 187 F.R.D. 606, 609 (N.D. Cal. 1998) (applying federal law to pendent state law malpractice claims where state privilege was "inconsistent with the flexibility of federal privilege law.")

Plaintiffs allege that Defendants violated Section 43(a) of the Lanham Act, which provides relief for "any person who believes that he or she is . . . likely to be damaged" by another person's "false or misleading description of fact, or . . . representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities of another person's goods [or] services[.]"15 U.S.C. § 1125(a)(1)(B). Plaintiffs claim that they have been damaged by Mount Carmel and Trinity's false advertising campaign, undertaken between

January and July 2019 at Trinity's direction in order to protect Defendants' reputations by touting a supposedly thorough investigation that laid blame for the allegedly improper care provided to 35 near-death patients on specific individual claims that their actions were against policies and went undetected. As a result of Defendants' advertising/public relations/promotional campaign which falsely indicated that each of the Plaintiffs were involved in harming patients—when caring for patients or supervising patients care, or teaching clinical professionals about patient care is each of their learned professions—each of the ten Plaintiffs suffered a serious, irreparable, competitive injury excluding them from their chosen professions or the healthcare field entirely or causing them to lose seniority. As a result, records of patient care or any investigation relating to it are at the core of Plaintiffs' federal claims—which, it should be noted, *was the basis of Defendants' removal* of the case from to this Court.

### B. Even if the Peer Review Privilege Applied Here, Documents Requested by Plaintiffs Are Not Subject to Such Privilege

R.C. Section 2305.252 Confidentiality of proceedings and records within scope of peer review committee of health care entity, provides:

> (A) Proceedings and records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care entity or health care provider, including both individuals who provide health care and entities that provide health care, arising out of matters that are the subject of evaluation and review by the peer review committee.

However, R.C. Section 2305.252 is by no means a broad privilege which attaches simply by the Defendants asserting such privilege. Since R.C. Section 2305.252, the physician peer review privilege, did not exist within federal common law, it "must be strictly construed against the party seeking to assert it and may be applied only to those circumstances specifically named in the statute." *Ward v. Summa Health System*, 128 Ohio St.3d 212, 2010 Ohio 6275. As the

Ohio Court of Appeals further articulated through a string of supporting Ohio case law, "A healthcare entity asserting the R.C. 2305.252 privilege bears the burden of establishing the applicability of the privilege. *Lowrey v. Fairfield Med. Ctr.*, 5th Dist. No. 08 CA 85, 2009-Ohio-4470; *Giusti v. Akron Gen. Med. Ctr.*, 178 Ohio App.3d 53, 2008-Ohio-4333. 'Simply labeling a document peer review, confidential, or privileged does not invoke the statutory privilege.' *Selby v. Fort Hamilton Hosp.*, 12th Dist. No. 2007-05-126, 2007-Ohio-2413. Rather to attain the benefits of the peer review privilege, a health care entity must establish that the documents at issue satisfy the criteria of R.C. 2305.252." *Bansal v. Mount Carmel Health Systems, Inc.,* 10th Dist. No. 09AP-351, 2009 Ohio 6845.

The *Bansal* court further explained that "[t]o prove the privilege, the health care entity must first establish the existence of a committee that meets the statutory definition of 'peer review committee' contained in R.C. 2305.25(E). *Ward v. Summa Health Sys.*, 9th Dist. No. 24567, 2009- Ohio-4859; *Manley v. Heather Hill, Inc.*, 175 Ohio App.3d 155, 2007-Ohio-6944; *Smith v. Manor Care of Canton, Inc.*, 5th Dist. No. 2005-CA-00100, 2006-Ohio-1182. Second, the health care entity must establish that each of the documents that it refuses to produce in response to a discovery request is a 'record[ ] within the scope of a peer review committee.' R.C. 2305.252. The health care entity must provide evidence as to the specific documents requested, not generalities regarding the types of documents usually contained in a peer review committee's records." *Id* at ¶15. Defendants have failed on both counts.

Defendants incorrectly assert peer review privilege to avoid production in response to the following 15 Requests:

- Plaintiffs' First Set of Document Requests (Exhibit B to the Declaration of Robert S. Landy attached hereto) ("PDRa") 11: All documents and/or communications referring or relating to any of the Terminated Employee Plaintiffs, created, sent or received between January 1, 2018 and September 1, 2019

- PDRa-13: All documents and/or communications referring or relating to any of the 35 Patients, created between October 1, 2018 and January 15, 2019, including, but not limited to, any and all documents and/or communications referring or relating to any review of the care provided to any of the 35 Patients.

- PDRa-18: All documents and/or communications referring or relating to the "five cases" identified in Defendants' response to Interrogatory number 9 above.

- PDRa-19: All documents and/or communications referring, relating to or used in connection with the determinations identified in response to Interrogatories 12 and 14 above

- PDRa-20: All "Voice" reports generated concerning any of the 35 Patients, including but not limited to the reports created in the Voice program, and any records indicating who received or viewed any such report, when such individual accessed the report, and any comments made in connection with any such report that were recorded by the program

- PDRa-26: All communications involving two or more of the following individuals (as sender, recipient, or secondary recipient (i.e. "cc" or "bcc")): Edward Lamb, Sean McKibben, Larry Swanner, Gay Landstrom, Mary LaFrancois, Dina Bush, Mavis Kramer and/or David Ralston that was created or sent on or after November 19, 2018 through and including December 15, 2018

- PDRa-33: All documents prepared by or for, or provided to any person in connection with any review of the conduct of any person involved in the care of the 35 Patients, including but not limited to any review conducted by Dr. Rosalie Tocco-Bradley or any member of the Mount Carmel Medical Executive Committee that met on or about December 10, 2018.

- PDRa-34: All communications sent or received by Dr. Rosalie Tocco-Bradley concerning Dr. William Husel, including but not limited to any document referencing opinions of such care held by others, or any reference to disciplinary actions already taken or communications made with the Relevant Legal Authorities.

- PDRa-35: All communications sent or received by any member of the Mount Carmel Medical Executive Committee that met on or about December 10, 2018 concerning Dr. William Husel or the process of reviewing the care he provided.

- Plaintiffs' Second Set of Document Requests (Exhibit C to the Declaration of Robert S. Landy attached hereto) ("PDRb") 5: All documents and/or communications referring or relating to any of the Additional 16 Patients, created between October 1, 2018 and the present, including, but not limited to, any and all documents and/or communications referring or relating to any review of the care provided to any of the Additional 16 Patients

- PDRb-6: All documents and/or communications referring or relating to the Thorough Investigation referred to in Mount Carmel's email to WOSU

- PDRb-7: All documents and/or communications referring to, relating to or constituting a part of Project Lighthouse. In addition to Defendants' internal documents and/or communications, this Request also includes but is not limited to all documents and/or communications with the Franklin County Prosecutor's Office, the Columbus Police, Ron O'Brien, Sergeant McConnell, Chief Thomas Quinlan, or any of their agents, employees or detectives

- PDRb-8: All Documents and materials referred to as "results" in the statement "Mount Carmel did a thorough investigation and we provided the results of the investigation to the appropriate authorities" which was provided to WOSU

- PDRb-9: Each of the Lighthouse Patient Reports, as well as any drafts or additional or similar reports created in connection with Project Lighthouse

- PDRb-10: Other than communications with counsel, all documents and/or communications relating to the decision to produce or not to produce Project Lighthouse reports and/or documents to any third party

## II.  DEFENDANTS' REMAINING PRIVILEGE OBJECTIONS LARGELY DO NOT APPLY[3]

### A.  Work Product Doctrine Is Not an Absolute Immunity and Cannot Prevent Discovery into the Investigation at Issue in this Action

Defendants incorrectly assert the "work product privilege" in response to 19 of Plaintiffs'

requests. First, as this Court articulated before delving into its contours, "Work product is a

protection, not a privilege. It is intended to protect the adversary system." *Guy v. United*

*Healthcare Corp.*, 154 F.R.D. 172, 181 (S.D. Ohio 1993). More importantly here, the work-

product doctrine is a qualified immunity, and subject to Rule 26(b)(4) (regarding trial preparation

and expert witnesses), work product materials may still be discovered if: (i) they are otherwise

discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the

materials to prepare its case and cannot, without undue hardship, obtain their substantial

---

[3] Defendants object to all of Plaintiffs' Second Requests on the grounds that they seek private patient information protected by state and federal law. However, Plaintiffs do not seek such information and confidential information, including patient names, social security numbers, or other identifying information may be redacted.

equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A)(i), (ii) (emphasis in original). Here, the

quality and scope of the publicly-touted investigation itself are at the core of Plaintiffs' claims.

Defendants seek to employ the doctrine to shield them not only from production, but liability

itself, by rendering the very subject matter of the litigation unexaminable. The law does not

permit this.

Here, the investigation (which may have been in part directed by attorneys) is being used

as both a sword and a shield. It has been publicly held out as a process that can ensure future

patients that (alleged) past problems have been addressed and (allegedly) responsible parties

have been terminated. These statements are the crux of Plaintiffs' Lanham Act claims as well as

their defamation claims. As such, placing the investigation as a whole beyond the reach of

discovery will make it impossible for the Plaintiffs to prepare their case. Since the immunity is

inapplicable here, a careful evaluation of whether any particular document does or does not

constitute work product is unnecessary.

> **B.**    **Attorney-Client Privilege and Work Product With Respect to Certain Other Categories of Documents**
>
>> *1.    Attorney-Client Privilege*

While Defendants have yet to produce a log of withheld material, it is clear that the

attorney-client privilege cannot apply to any of the communications between medical and

administrative staff that is requested. Nor can it apply to the facts discovered or considered in

connection with any investigation performed by Defendants, or to records that were not prepared

by or for any attorney. The Sixth Circuit has held that the following criteria must be satisfied in

order to hold that a communication is protected under the attorney client privilege: (1) Where

legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such,

(3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are

at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived. *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)) (emphasis added). However, the attorney-client privilege has been asserted in connection with the following 28 requests, each of which seeks ordinary medical and operational records that, by definition, would not contain or reflect legal advice or attorney-client communications:

- PDRa-11: All documents and/or communications referring or relating to any of the Terminated Employee Plaintiffs, created, sent or received between January 1, 2018 and September 1, 2019

- PDRa-13: All documents and/or communications referring or relating to any of the 35 Patients, created between October 1, 2018 and January 15, 2019, including, but not limited to, any and all documents and/or communications referring or relating to any review of the care provided to any of the 35 Patients

- PDRa-14: All documents and/or communications referring or relating to the creation or implementation of any policy or procedure regarding the dosage, use or administration of fentanyl, Dilaudid or Versed created or implemented in December 2018

- PDRa-15: All documents and/or communications referring or relating to criticisms or evaluations of any policy or procedure regarding the dosage, use or administration of fentanyl, Dilaudid or Versed created or implemented in December 2018

- PDRa-16: All documents and/or communications referring or relating to the creation or implementation of any policy or procedure regulating Pyxis overrides and/or deviations from any existing pharmaceutical dosage or administration policy created or implemented in December 2018

- PDRa-17: All documents and/or communications referring or relating to criticisms or evaluations of any policy or procedure regulating Pyxis overrides and/or deviations from any existing pharmaceutical dosage or administration policy created or implemented in December 2018

- PDRa-18: All documents and/or communications referring or relating to the "five cases" identified in Defendants' response to Interrogatory number 9 above

- PDRa-19: All documents and/or communications referring, relating to or used in connection with the determinations identified in response to Interrogatories 12 and 14 above

10

- PDRa-26: All communications involving two or more of the following individuals (as sender, recipient, or secondary recipient (i.e. "cc" or "bcc")): Edward Lamb, Sean McKibben, Larry Swanner, Gay Landstrom, Mary LaFrancois, Dina Bush, Mavis Kramer and/or David Ralston that was created or sent on or after November 19, 2018 through and including December 15, 2018

- PDRa-27: All documents referring or relating to a potential or envisioned loss in revenue for Defendants for reasons relating to any aspect of the care provided in the ICU including terminal ventilator withdrawals

- PDRa-28: All documents referring or relating to a potential or envisioned loss in revenue for Defendants for reasons relating to the use of fentanyl or other opioids within the hospitals of Mount Carmel Health System

- PDRa-29: All documents referring or relating to a potential or envisioned loss or demotion of status for Defendants in any federal or state program (including but not limited to status as a Medicare or Medicaid "Accountable Care Organization") for reasons relating to the use of fentanyl or any opioids by the medical staff of the ICUs

- PDRa-30: All documents referring or relating to a potential renewal of status for Defendants in any federal or state program (including but not limited to status as a Medicare or Medicaid "Accountable Care Organization")

- PDRa-32: All documents prepared by or for, or provided to any "Fair and Just Culture" committee as identified in Defendants' Rule 26 initial disclosures in connection with any review of the conduct of any person involved in the care of the 35 Patients

- PDRa-33: All documents prepared by or for, or provided to any person in connection with any review of the conduct of any person involved in the care of the 35 Patients, including but not limited to any review conducted by Dr. Rosalie Tocco-Bradley or any member of the Mount Carmel Medical Executive Committee that met on or about December 10, 2018

- PDRa-34: All communications sent or received by Dr. Rosalie Tocco-Bradley concerning Dr. William Husel, including but not limited to any document referencing opinions of such care held by others, or any reference to disciplinary actions already taken or communications made with the Relevant Legal Authorities

- PDRa-35: All communications sent or received by any member of the Mount Carmel Medical Executive Committee that met on or about December 10, 2018 concerning Dr. William Husel or the process of reviewing the care he provided

- PDRa-38: Any and all documents and/or communications (including but not limited to scripts, draft scripts, documents or communications concerning scripts) referring or relating to proposed or actual communications with family members or estate

11

representatives of any of the 35 Patients created on or after December 1, 2018, as well as any audio or written record of such communications (whether verbatim or not)

- PDRa-41: All documents reflecting media strategies or other plans for communicating with the public concerning the 35 Patients (whether by name or anonymously) or the Internal Investigation either generally or with respect to specific issues

- PDRa-42: All documents reflecting media strategies or other plans for communicating with the public concerning actions taken or purportedly taken by Defendants as a result of the Internal Investigation

- PDRa-43: Any documents reflecting strategies or other plans for communicating with the Ohio Department of Health and/or the Centers for Medicare and Medicaid Services concerning the 35 Patients, William Husel, the use of opioids in patient care in the ICUs, and/or polices regarding the use and dispensing of narcotics via the Pyxis systems or otherwise

- PDRa-44: All communications with the Ohio Department of Health and/or the Centers for Medicare and Medicaid Services concerning the 35 Patients, William Husel, the use of opioids in patient care in the ICUs, and/or polices regarding the use and dispensing of narcotics via the Pyxis systems or otherwise

- PDRb-5: All documents and/or communications referring or relating to any of the Additional 16 Patients, created between October 1, 2018 and the present, including, but not limited to, any and all documents and/or communications referring or relating to any review of the care provided to any of the Additional 16 Patients

- PDRb-6: All documents and/or communications referring or relating to the Thorough Investigation referred to in Mount Carmel's email to WOSU

- PDRb-7: All documents and/or communications referring to, relating to or constituting a part of Project Lighthouse. In addition to Defendants' internal documents and/or communications, this Request also includes but is not limited to all documents and/or communications with the Franklin County Prosecutor's Office, the Columbus Police, Ron O'Brien, Sergeant McConnell, Chief Thomas Quinlan, or any of their agents, employees or detectives

- PDRb-8: All Documents and materials referred to as "results" in the statement "Mount Carmel did a thorough investigation and we provided the results of the investigation to the appropriate authorities" which was provided to WOSU

- PDRb-9: Each of the Lighthouse Patient Reports, as well as any drafts or additional or similar reports created in connection with Project Lighthouse

- PDRb-10: Other than communications with counsel, all documents and/or communications relating to the decision to produce or not to produce Project Lighthouse reports and/or documents to any third party

Furthermore, "The burden of establishing the attorney-client privilege rests with the party asserting it." *M.H. v. Akron City Sch. Dist. Bd. of Educ.*, No. 5:18-CV-870, 2019 WL 4346274, at *1 (N.D. Ohio Sept. 12, 2019) (citing *Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002)); *see also McCall v. Procter & Gamble Co.*, No. 1:17-CV-406, 2019 WL 3997375, at *2 (S.D. Ohio Aug. 22, 2019) ("The burden of establishing a claim of privilege rests with the party asserting it … If a claim of privilege is challenged, the party asserting it must establish each element by competent evidence." (internal citations omitted)). Lastly, the attorney-client privilege should be construed narrowly. *Fausek v White*, 965 F.2d at 129.

## 2.    Work Product

In addition to documents relating to the investigation, Defendants refuse to produce certain categories of documents on the basis of work product where the immunity is clearly inapplicable. This includes the assertion of work product protection for documents that include conversations between hospital employees and statements to internal (non-investigative) committees, medical dosing decisions, records made in the ordinary course of business, and public statements to the media and other agencies. However, the work product doctrine "protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process." *In re Powerhouse Licensing*, 441 F.3d at 438. These categories of documents do not inquire into the files and/or mental impressions of an attorney, were not created in anticipation of litigation, and are not work product.

Namely, Defendants incorrectly assert work product protection in response to the following requests:

- PDRa-26: All communications involving two or more of the following individuals (as sender, recipient, or secondary recipient (i.e. "cc" or "bcc")): Edward Lamb, Sean McKibben, Larry Swanner, Gay Landstrom, Mary LaFrancois, Dina Bush, Mavis Kramer and/or David Ralston that was created or sent on or after November 19, 2018 through and including December 15, 2018

- PDRa-32: All documents prepared by or for, or provided to any "Fair and Just Culture" committee as identified in Defendants' Rule 26 initial disclosures in connection with any review of the conduct of any person involved in the care of the 35 Patients

- PDRa-36: Any document indicating a recommended dosage or dosing protocol for the use of fentanyl, Dilaudid or Versed in connection with a terminal ventilator withdrawal[1]

None of the individuals identified in PDRa-26 are attorneys. Even if communications between individuals identified in PDRa-26 eventually became part of Defendants' (attorney's) work product, the law is clear that "the written statement of a witness, whether prepared by him and later delivered to the attorney . . . is not properly considered the 'work product' of an attorney. It records the mental impressions and observations of the witness himself and not those of the attorney." *Scourtes v. Fred W. Albrecht Grocery Co.*, 15 F.R.D. 55, 58 (N.D. Ohio 1953). Nothing about the communications between individuals cited in PDRa-26 warrants work product protection. Accordingly, all communications responsive to PDRa-26 must be produced.

Similarly, arguing work product protection for documents responsive to PDRa-32 and PDRa-36 has no basis in the law. Defendants' "Fair and Just Culture" committee is not litigation specific, but rather an internal committee that pertains to Defendants' regular course of business. Ohio law overwhelmingly supports the position that "[r]eports of accidents, whether or not they include statements of persons who ultimately might become witnesses, when made in the regular course of business of a corporate party, are not made in preparation for trial and are not, therefore, protected. *Panella v. Baltimore & Ohio R. Co.*, 14 F.R.D. 196 (N.D. Ohio

14

1951); *Viront v. Wheeling & Lake Erie R. Co., D.C.N.D. Ohio* 1950, 10 F.R.D. 45; *Berger v. Central Vt. Ry.*, 8 F.R.D. 419 (D. Mass. 1948); *Newell v. Capital Transit Co., D.C.D.C.*1948, 7 F.R.D. 732." *Scourtes v. Fred W. Albrecht Grocery Co.*, 15 F.R.D. 55, 58-59 (N.D. Ohio 1953). Hospital incident reports are tantamount to "accident reports" prepared by someone with personal knowledge of the event. Statements reflected in "incident reports" are essentially statements of witnesses entered at a time in close proximity to the incident, which as stated above, is not properly considered to be the "work product" of an attorney. *Id.*

Defendants also incorrectly assert work product protection in response to the following requests, all of which relate to the review of patient care:

- PDRa-33: All documents prepared by or for, or provided to any person in connection with any review of the conduct of any person involved in the care of the 35 Patients, including but not limited to any review conducted by Dr. Rosalie Tocco-Bradley or any member of the Mount Carmel Medical Executive Committee that met on or about December 10, 2018.

- PDRa-34: All communications sent or received by Dr. Rosalie Tocco-Bradley concerning Dr. William Husel, including but not limited to any document referencing opinions of such care held by others, or any reference to disciplinary actions already taken or communications made with the Relevant Legal Authorities.

- PDRa-35: All communications sent or received by any member of the Mount Carmel Medical Executive Committee that met on or about December 10, 2018 concerning Dr. William Husel or the process of reviewing the care he provided.

- PDRb-5: All documents and/or communications referring or relating to any of the Additional 16 Patients, created between October 1, 2018 and the present, including, but not limited to, any and all documents and/or communications referring or relating to any review of the care provided to any of the Additional 16 Patients.

When addressing the question of whether a document was "prepared in anticipation of litigation or for trial," the Sixth Circuit considers if "that document was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose." *In re Prof'ls Direct.,* 578 F.3d at 439 (citing *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir.

2006)). Both Ohio law and Defendants' own internal review policies support the position that the Hospital's internal review of patient care was a practice in the ordinary course of business.

First, R.C. 2505.25(E)(1) provides that a "peer review committee" is a utilization review committee, quality assessment committee, performance improvement committee, tissue committee, credentialing committee, or other committee that . . . [c]onducts professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health care providers, including both individuals who provide health care and entities that provide health care. The statutory authorization of a hospital's review of the quality of care of its patients indicates that such review is within the ordinary course of business, rather than a function of the anticipation of litigation.

Second, Mount Carmel's policies provide a detailed procedural response to an event which triggers peer review, further indicating that review of such an event would most likely occur outside of the anticipation of litigation and rather, in the ordinary course of business.

Defendants also incorrectly assert work product protection in response to the following requests, all of which relate to public communication strategies, not litigation:

- PDRa-38: Any and all documents and/or communications (including but not limited to scripts, draft scripts, documents or communications concerning scripts) referring or relating to proposed or actual communications with family members or estate representatives of any of the 35 Patients created on or after December 1, 2018, as well as any audio or written record of such communications (whether verbatim or not).

- PDRa-41: All documents reflecting media strategies or other plans for communicating with the public concerning the 35 Patients (whether by name or anonymously) or the Internal Investigation either generally or with respect to specific issues.

- PDRa-42: All documents reflecting media strategies or other plans for communicating with the public concerning actions taken or purportedly taken by Defendants as a result of the Internal Investigation.

- PDRa-43: Any documents reflecting strategies or other plans for communicating with the Ohio Department of Health and/or the Centers for Medicare and Medicaid Services

concerning the 35 Patients, William Husel, the use of opioids in patient care in the ICUs, and/or polices regarding the use and dispensing of narcotics via the Pyxis systems or otherwise

- PDRa-44: All communications with the Ohio Department of Health and/or the Centers for Medicare and Medicaid Services concerning the 35 Patients, William Husel, the use of opioids in patient care in the ICUs, and/or polices regarding the use and dispensing of narcotics via the Pyxis systems or otherwise

- PDRb-6: All documents and/or communications referring or relating to the Thorough Investigation referred to in Mount Carmel's email to WOSU

- PDRb-7: All documents and/or communications referring to, relating to or constituting a part of Project Lighthouse. In addition to Defendants' internal documents and/or communications, this Request also includes but is not limited to all documents and/or communications with the Franklin County Prosecutor's Office, the Columbus Police, Ron O'Brien, Sergeant McConnell, Chief Thomas Quinlan, or any of their agents, employees or detectives

- PDRb-8: All Documents and materials referred to as "results" in the statement "Mount Carmel did a thorough investigation and we provided the results of the investigation to the appropriate authorities" which was provided to WOSU

## CONCLUSION

Defendants have unjustifiably withheld discoverable information by withholding documents that are responsive to Plaintiffs' requests on the incorrect assertion of peer review privilege, attorney client privilege and work product doctrine. For the reasons set forth above, Plaintiffs' Motion to Compel should be granted in its entirety.

Dated: New York, New York
        December 24, 2020

                                        Respectfully submitted,


                                        /s/ Robert S. Landy
                                        FORD O'BRIEN LLP
                                        Robert S. Landy
                                        Anjula S. Prasad
                                        575 Fifth Avenue
                                        17th Floor
                                        New York, New York 10017
                                        rlandy@fordobrien.com
                                        (212) 265-1047

                                        GRAFF & McGOVERN, LPA
                                        Douglas Graff, Esq. (0013222)
                                        604 East Rich Street
                                        Columbus, OH 43215
                                        (614) 228-5800
                                        Doug@grafflaw.com

                                        *Attorneys for Plaintiffs*