**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**REBECCA MCNEIL, et al.,**

    **Plaintiffs,**

    v.

**MOUNT CARMEL HEALTH SYSTEM,**
et al.,

    **Defendants.**

Case No. 2:20-cv-258
Judge Edmund A. Sargus
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion to Compel Discovery. (Doc. 26). For the reasons that follow, Plaintiffs' Motion is **DENIED without prejudice**. Defendants are **ORDERED** to produce a privilege log, consistent with the findings below, within fourteen (14) days of the date of this Opinion and Order.

### I.    BACKGROUND

This is a defamation case arising from the alleged actions of former Mount Carmel Health System ("Mount Carmel") physician, Dr. William Husel. In January 2019, Mount Carmel released a public statement that one of its former ICU physicians had administered "excessive and potentially fatal" doses of Fentanyl to 27 patients. (Doc. 8, ¶ 32). According to the statement, this physician did not act alone—ICU nurses and pharmacists also "made bad decisions" and "ignor[ed] policies," placing "patients' safety at risk." (*Id*.). Mount Carmel terminated the allegedly complicit ICU employees, and in June 2019, Dr. Husel was indicted for 25 counts of murder. (*Id*., ¶¶ 41, 43).

Plaintiffs, ten former Mount Carmel ICU employees, say they were made to be scapegoats. According to them, Mount Carmel and its Michigan-based parent company, Defendant Trinity

Health Corporation ("Trinity"), "panicked" about the rise of criminal and administrative actions against healthcare providers associated with the nationwide opioid epidemic. (*Id.*, ¶ 21). Specifically, they feared the public or regulators would learn that Mount Carmel ICU patients sometimes received high doses of Fentanyl. (*Id.*, ¶ 28). Plaintiffs acknowledge that, in some cases, they did. (*See id.*, ¶¶ 2–5, 18–26). But according to them, nothing improper, let alone criminal, occurred. (*See id.*). Rather, they say medical literature recommends high doses of certain opioids to ease a patient's suffering between the removal of life support and death. (*See id.*). And Mount Carmel physicians and nurses had discretion in these circumstances based upon the individual needs of their patients. (*Id.*, ¶¶ 17–19).

Nevertheless, Defendants were concerned about optics. (*Id.*, ¶ 27). Following several internal complaints regarding Dr. Husel's use of opioids, the veracity of which Plaintiffs question, Defendants allegedly spun a "rogue doctor" narrative to "explain" any perceived wrongdoings associated with the use of opioids. (*Id.*, ¶ 28). Mount Carmel abruptly changed its opioid policies and publicly blamed Dr. Husel and dozens of ICU employees for the deaths of 27 patients. (*Id.*, ¶¶ 27–28). Plaintiffs say that their personal and professional lives were left in tatters. (*Id.*, ¶¶ 43–47).

Procedurally speaking, the parties are in the midst of written discovery. (*See* Doc. 25). Plaintiffs requested documents concerning the care they provided Dr. Husel's alleged victims, as well as information from Defendants' investigation of the alleged wrongdoings. (*See generally* Doc. 26). Defendants objected broadly, asserting attorney-client privilege and work product protection. (*See generally* Doc. 29). They represent they are finalizing a privilege log but contend that any documents from their investigation were created in the anticipation of litigation and are immune from discovery. (Doc. 26). Plaintiffs move to compel those documents.

2

Following a status conference with the Court, Defendants withdrew their objections based upon Ohio's peer-review privilege. (*See* Doc. 32; *see also* Doc. 29 at 2). Yet they still object to producing these documents, citing work product protection or attorney-client privilege. (*See generally* Doc. 29). Because, however, Defendants do not substantively address their claims of attorney-client privilege and because they have not yet produced a privilege log describing the documents, the Court addresses Defendants' broader claims of work product protection. Plaintiffs' Motion is fully briefed and ripe for resolution.

## II.  STANDARD

Two standards matter here, Rule 37 of the Federal Rules of Civil Procedure and the federal work product doctrine.

### A. Motion to Compel Standard

Determining the proper scope of discovery falls within the broad discretion of the trial court. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir.1998). A party may move to compel discovery under Rule 37 of the Federal Rules of Civil procedure when the opposing party fails to provide proper responses to interrogatories or requests for production. The movant bears the initial burden to show that the information sought is relevant. *Gruenbaum v. Werner Enter., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010).

### B. Work Product Doctrine Standard

The work product doctrine "is 'not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation.'" *Carr v. Lake Cumberland Reg'l Hosp.*, No. CV 15-138-DLB-HAI, 2017 WL 5490916, at *2 (E.D. Ky. Nov. 15, 2017) (quoting *In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir. 1997)). The doctrine "permit[s] an attorney to 'assemble information, sift what he considers to be

3

the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference . . . to promote justice and to protect [his] clients' interests.'" *Carr*, 2017 WL 5490916, at *2 (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)). Importantly, "[t]he work product doctrine . . . does not protect the discovery of underlying facts, including facts concerning the creation of work product or the facts contained within that work product." *Bobalik v. BJ's Rest., Inc.*, No. 3:19-CV-0661-RGJ-LLK, 2020 WL 7241060, at *5 (W.D. Ky. Dec. 9, 2020) (citation omitted).

Pertinent here, Defendants, as the ones claiming work product protection, bear the burden of establishing that each withheld document was prepared in anticipation of litigation. *Gruenbaum*, 270 F.R.D. at 303 (citing *U.S. v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006)). Defendants may carry their burden "'in any of the traditional ways in which proof is produced in pretrial proceedings such as affidavits made on personal knowledge, depositions, or answers to interrogatories.'" *Gruenbaum*, 270 F.R.D. at 304 (quoting *Roxworthy*, 457 F.3d at 597). An "'affidavit containing conclusory statement[s],'" however, is not enough. *Gruenbaum*, 270 F.R.D. at 305 (quoting *Roxworthy*, 457 F.3d at 597).

Yet even if Defendants carry their burden as to certain documents, Plaintiffs still have another shot at them. Plaintiffs may access factual work product upon a "'demonstration of substantial need or inability to obtain the equivalent without undue hardship.'" *Carr*, 2017 WL 5490916, at *2 (quoting *In re Perrigo Co.*, 128 F.3d at 437).

**III. DISCUSSION**

Defendants investigated Mount Carmel's administration of opioids to critical care patients. (*See* Doc. 29 at 4). Plaintiffs want documents from that investigation. (*See generally* Doc. 26). Yet Defendants respond that such documents are immune from discovery because the

4

"investigation was prompted by specific complaints made within [Mount Carmel] and was conducted in anticipation of litigation, with the involvement of [their] counsel." (Doc. 29 at 4). Indeed, they say, they "were correct to anticipate that litigation, as they have been sued not just here, but in a second defamation case . . . and in dozens of medical malpractice cases, as well as the criminal case against Dr. Husel." (*Id.*).

Defendants' argument is flawed in two ways. Beginning with the most important—the work product doctrine is not that broad. Defendants assert that, because lawsuits followed the investigation, documents from the investigation were necessarily created in anticipation of litigation. (*See, e.g.*, Doc. 29 at 7–8 (asserting, as "evidence[]," patient families' medical malpractice actions against Dr. Husel and Defendants)). That is not the law. Rather, "the Sixth Circuit has adopted the 'because of' test, which asks whether the documents at issue were prepared or obtained *because of* the prospect of litigation." *Bobalik*, 2020 WL 7241060, at *5 (emphasis in original) (citing *Roxworthy*, 457 F.3d at 590). To satisfy that test, Defendants must show: (1) the "'document was created because of [their] subjective anticipation of litigation, as contrasted with an ordinary business purpose'"; and (2) "'that subjective anticipation of litigation was objectively reasonable'" at the time the document was created. *Bobalik*, 2020 WL 7241060, at *5 (quoting *Roxworthy*, 457 F.3d at 594).

Of course, the answers to these questions depend on the specific document at issue and when it was created. *See Gruenbaum*, 270 F.R.D. at 304 (quoting *In re Prof'l Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009)) ("The party asserting work product protection therefore bears the burden of showing that 'anticipated litigation was the driving force behind the preparation of each requested document.'"). For example, the internal reports regarding Dr. Husel potentially raised red flags or prompted an investigation. But until "the possibility of litigation [] changed from a

5

theoretical possibility to a real possibility," work product protection is not triggered. *Young v. Chapman*, No. 3:14-CV-666-JHM-CHL, 2016 WL 1717226, at *7 (W.D. Ky. Apr. 28, 2016) (quotation marks and citation omitted).

So Defendants cannot rely simply on the fact that litigation ultimately ensued. *See, e.g.*, *Bobalik*, 2020 WL 724160, at *6 (finding "position that any incident could result in litigation" as "not objectively reasonable"); *Futhey v. United Transp. Union Ins. Ass'n*, No. 1:14 CV 463, 2015 WL 2446169, at *2 (N.D. Ohio May 20, 2015) ("Although litigation did ensue, there is no reason to believe [defendant] would have anticipated the current indemnification litigation at the time the investigation was commissioned."); *Rodriguez v. CHRISTUS Spohn Health Sys.*, No. C-09-95, 2011 WL 3652189, at *3 (S.D. Tex. Aug. 18, 2011) (finding that work product doctrine did not apply to hospital's incident investigation because purpose of the investigation was to determine what happened and to prevent such an incident from happening again); *Mich. First Credit Union v. Cumis Ins. Soc., Inc.*, No. 05-74423, 2006 WL 1851018, at *1 (E.D. Mich. July 5, 2006) (emphasis in original) (holding that "documents generated" during investigation "were made for ordinary business purposes" because, "[w]hile litigation is always a possibility, it was not a *real* possibility" at the time the documents were created).

Next, Defendants have improperly flipped the burden on its head. (*See generally* Doc. 29 (asserting, throughout, that Plaintiffs fail to support their arguments against work product with relevant caselaw)). Plaintiffs bear the initial burden to show that the documents are relevant. *Gruenbaum*, 270 F.R.D. at 302. Given the subject matter of Plaintiffs' case and the documents requested, Plaintiffs have satisfied that burden. But Defendants carry the burden to show that they properly withheld each document. *See Gruenbaum*, 270 F.R.D. at 304 (quoting *In re Prof'l Direct Ins. Co.*, 578 F.3d at 439) ("The party asserting work product protection therefore bears the burden

6

of showing that 'anticipated litigation was the driving force behind the preparation of each requested document.'"). Simply stating in conclusory fashion that the documents were created in anticipation of litigation, as Defendants do throughout their brief, is not enough. (*See, e.g.*, Doc. 29 at 4 (asserting that the investigation "was prompted by specific complaints made within the [Mount Carmel] system and was conducted in anticipation of litigation, with the involvement of Defendants' counsel"); *id*. at 6 (contending that Defendants' review of opioid protocols "naturally involved lawyers and their opinions of what was or not permitted by the law")).

Rather, Defendants must provide "[a] specific and detailed affidavit establishing that a document was prepared in anticipation of litigation[.]" *Gruenbaum*, 270 F.R.D. at 304–05 (citing *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 381 (6th Cir. 2009)); *see also Gruenbaum*, 270 F.R.D. at 304 (quoting *Roxworthy*, 457 F.3d at 597) (noting that an "'affidavit containing conclusory statement[s],'" is insufficient). All told, Defendants have more work to do. Before producing their privilege log, they must contemplate their burden as to each entry.

One last point. The work product doctrine is not absolute. Even if Defendants prepared certain documents in anticipation of litigation, Plaintiffs may be able to access them upon a showing of substantial need. While Plaintiffs may not access an attorney's "core opinion work product," they may be entitled to factual work product, like investigative reports or witness statements. *Linetsky v. City of Solon*, No. 1:16-CV-52, 2016 WL 5402615, at *3 (N.D. Ohio Sept. 28, 2016) (citations omitted). And in showing substantial need, the unique nature of Plaintiffs' claims matter. *See Stampley v. State Farm Fire & Cas. Co.*, 23 F. App'x 467, 471 (6th Cir. 2001) (noting that "the relative importance of the information in the documents to the party's case" matters to the showing of "substantial need"). Plaintiffs say that the "actual investigation was perfunctory" and its "results" and "related decisions were preordained." (Doc. 31 at 14). So they

7

seek to learn, for example, whether anyone reviewed critical medical records before determining that the care provided to dying patients was improper. (*Id.*). It appears, therefore, that at least some of the documents from the investigation, which ultimately resulted in Plaintiffs' termination and the alleged defamation, are at the very heart of Plaintiffs' case.

* * *

As the foregoing shows, a ruling on the privileged nature on the documents at issue would be premature. Defendants have not completed or produced a privilege log. As they do so, they must consider the findings set forth above as to each withheld document. Upon review of the privilege log, Plaintiffs may raise any concerns with Defendants, and the Court expects the parties to confer meaningfully regarding each disputed document. Only after exhausting those efforts, may Plaintiffs file a renewed motion to compel.

### IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motion (Doc. 26) is **DENIED without prejudice**. Defendants are **ORDERED** to produce a privilege log, consistent with the above findings, within fourteen (14) days of the date of this Opinion and Order.

IT IS SO ORDERED.

Date: February 8, 2021                                              s/ Kimberly A. Jolson
                                                                                KIMBERLY A. JOLSON
                                                                                UNITED STATES MAGISTRATE JUDGE