# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

REBECCA MCNEIL, *et al.*,

     Plaintiffs,

v.

MOUNT CARMEL HEALTH SYSTEM,
TRINITY HEALTH CORPORATION, and
EDWARD LAMB,

     Defendants.

Case No. 2:20-cv-258

Hon. Edmund A. Sargus, Jr.

Magistrate Judge Kimberly A. Jolson

## DEFENDANTS' MOTION FOR PROTECTIVE ORDER
### PURSUANT TO FED.R.CIV.P. 26(c)(1) and 26(b)(3)(A) and (B)

Defendants, Mount Carmel Health System, Trinity Health Corporation, and Edward Lamb, by their counsel, The Miller Law Firm, P.C., state as follows for their Motion for Protective Order pursuant to Fed.R.Civ.P. 26(c)(1) and 26(b)(3)(A) and (B):

1.    This case involves Plaintiffs' claims based on Defendants' actions taken following allegations regarding Dr. William Husel's treatment of patients in the Intensive Care Unit at Defendant, Mount Carmel Health System. Dr. Husel is awaiting trial on 25 counts of first-degree murder arising out of his patient care.

2.    Plaintiffs have served Defendants with fifty-four Requests for Production pursuant to Fed.R.Civ.P. 34. Defendants have objected to three of those Requests based on the attorney work product doctrine.

3.    The Requests at issue seek documents regarding Defendants' communications with the families of Dr. Husel's patients who died under his care (Request No. 37), documents reflecting Defendants' media strategies or communication plans regarding Dr. Husel's patients or the internal

investigation into his treatment (Request No. 40), and documents reflecting Defendants' media strategies or communication plans regarding actions taken by Defendants as a result of its internal investigation (Request No. 41).

4. The documents sought by Plaintiffs in Requests for Production Nos. 37, 40, and 41 are protected from discovery by the attorney work product doctrine. Those documents were created in anticipation of litigation and at the direction of Defendants' counsel. In fact, there has been an explosion of litigation arising out of Dr. Husel's treatment of patients at MCHS, including the instant case, 34 medical malpractice actions, the criminal case against Dr. Husel, a state defamation lawsuit against Defendants by Dr. Husel, and regulatory proceedings by the Ohio State Medical Board, and the Nursing Board of Ohio, and the Ohio State Pharmacy Board, among others.

5. In a telephone conference with counsel on July 13, 2021, Magistrate Judge Jolson ordered the parties to brief the attorney work product doctrine issue in advance of her *in camera* review of the documents in question. Counsel for the parties agreed that the best way to do so was for Defendants to bring the instant Motion for Protective Order.

6. In support of this Motion, Defendants rely on the accompanying Brief and exhibits to the Brief, including the affidavits of Mandi Murray and Melissa Lander.

7. Defendants' counsel sought the concurrence of Plaintiffs' counsel in the relief sought by this Motion on August 19, 2021, but concurrence was denied. Plaintiffs have consented to the filing of this Motion in accordance with the Court's directive as stated in Paragraph 5.

WHEREFORE, Defendants respectfully request that this Court issue a protective order under Fed.R.Civ.P. 26(c)(1) and 26(b)(3)(A) shielding the attorney work product documents sought by Plaintiffs' Requests for Production 37, 40, and 41 from discovery. In the alternative, even if the Court orders discovery of the documents, Defendants request that the Court order

redactions to protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of Defendants' counsel or other representatives concerning the litigation as required by Fed.R.Civ.P. 26(b)(3)(B).

Respectfully submitted,

*/s/* Kevin F. O'Shea
E. Powell Miller (*pro hac vice*)
Kevin F. O'Shea (*pro hac vice*)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
(248) 841-2200
epm@millerlawpc.com
kfo@millerlawpc.com

M. J. Asensio (0030777)
Samuel E. Endicott (0094026)
**BAKER & HOSTETLER LLP**
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Telephone: (614) 228-1541
Facsimile: (614) 462-2616
maseniso@bakerlaw.com
sendicott@bakerlaw.com

*Attorneys for Defendants*

Dated: August 20, 2021

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

REBECCA MCNEIL, *et al.*,

      Plaintiffs,

v.

MOUNT CARMEL HEALTH SYSTEM, TRINITY HEALTH CORPORATION, and EDWARD LAMB,

      Defendants.

Case No. 2:20-cv-258

Hon. Edmund A. Sargus, Jr.

Magistrate Judge Kimberly A. Jolson

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER FOR DOCUMENTS <u>PROTECTED BY THE WORK PRODUCT DOCTRINE</u>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... ii

STATEMENT OF ISSUE PRESENTED ................................................. iv

INTRODUCTION ................................................................................1

BACKGROUND FACTS ......................................................................2

ARGUMENT .....................................................................................5

    I.    Legal Standard ...................................................................5

    II.    The Documents at Issue Are Protected Under the Attorney Work Product Doctrine ..........................................................................6

        A.    Scope of the Attorney Work Product Doctrine .....................7

        B.    The Documents at Issue Were Prepared in Anticipation of Litigation ...9

            1.    The Affidavits of Mandi Murray and Melissa Lander........................9

            2.    The Documents at Issue Were Not Prepared Solely or Primarily in the Ordinary Course of Business ...........................................................11

        C.    The Documents at Issue Were Prepared by or for Another Party or Its Representative......................................................................13

    III.    Plaintiffs' Cannot Establish a Substantial Need for the Disputed Documents or Their Inability to Obtain the Information By Other Means to Overrulethe Attorney Work Product Doctrine .....................................15

        A.    Plaintiffs Cannot Establish a "Substantial Need" for the Work Product Documents .......................................................................15

        B.    Plaintiffs Cannot Establish Their Inability to Obtain the Information .16

    IV.    In the Alternative, the Court Should Redact the Disputed Documents to Protect the Impressions, Opinions, and Legal Theories of Counsel .........17

CONCLUSION ..................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Alomari v. Ohio Dep't of Pub. Safety,*
   626 F. (6th Cir. 2015) ............................................................................................. 12

*Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,*
   1994 WL 58999 (6th Cir. Feb. 25, 1994) ................................................................... 7

*Barge v. Jaber,*
   831 F. Supp. 593 (S.D. Ohio 1993) ........................................................................ 12

*Brennan v. Engineered Products,*
   506 F.2d 299 (8th Cir. 1974) .................................................................................. 14

*Chrysler Corp. v. Fedders Corp.,*
   643 F.2d 1229 (6th Cir. 1981) .................................................................................. 6

*Colonial Gas Co. v. Aetna Cas. & Sur. Co.,*
   139 F.R.D. 269 (D.Mass.1991) ............................................................................... 15

*Dongguk Univ. v. Yale Univ.,*
   734 F.3d 113 (2d Cir. 2013) .................................................................................... 13

*Duplan Corp. v. Moulinage et Retorderie de Chavanoz,*
   509 F.2d 730 (4th Cir. 1974) .................................................................................. 16

*Employers Ins. of Wausau v. Fed'l Deposit Ins. Corp.,*
   1986 U.S. Dist. LEXIS 26562 (E.D. Tenn. April 18, 1986) ..................................... 14

*Hancock v. Dodson,*
   958 F.2d 1367 (6th Cir. 1993) ................................................................................... 5

*In re Cnty. of Erie,*
   473 F.3d 413 (2d Cir. 2007) .................................................................................... 12

*In re Copper Market Antitrust Litig.,*
   200 F.R.D. 213 (S.D.N.Y. 2001) ............................................................................. 13

*In re Grand Jury Subpoenas Dated March 24, 2003,*
   No. M11-189, 2003 WL 21262645 (S.D.N.Y. June 2, 2003) .................................... 13

*In re International Systems and Controls Corp.*,
  693 F.2d 1235 (5th Cir. 1982) ............................................................................ 15

*In re Powerhouse Licensing, LLC*,
  441 F.3d 467 (6th Cir. 2006) ............................................................................... 7

*In re Prof'ls Direct*, 578 F.3d 432 (6th Cir. 2009) ................................................. 7, 8

*Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.*,
  951 F. Supp. 679 (W.D. Mich. 1996) ................................................................... 7

*Reg'l Airport Auth. V. LFG, LLC*,
  460 F.3d 697(6th Cir. 2006) ................................................................................. 5

*Taylor v. Temple & Cutler*,
  192 F.R.D. 552 (E.D. Mich. 1999) .................................................................. 14, 15

*Toledo Edison Co. v. G.A. Technologies, Inc.*,
  847 F.2d 335 (6th Cir. 1988) ........................................................................ 5, 11, 16

*U.S. v. Adlman*,
  134 F.3d 1194 (2d Cir. 1998) ............................................................................... 7

*U.S. v. Roxworthy*,
  457 F.3d 590 (6th Cir. 2006) ............................................................................... 8

*United States v. Nobles*,
  422 U.S. 225 (1975) ............................................................................................ 7

**RULES**

Fed. R. Civ. P. 26 ................................................................................................... 5
Fed. R. Civ. P. 26(b)(1) ..................................................................................... 6, 14
Fed. R. Civ. P. 26(b)(3) ......................................................................................... 7
Fed. R. Evid. 501 ................................................................................................... 5
Fed.R.Civ.P. 26(b)(3)(A) ............................................................................... passim
Fed.R.Civ.P. 26(b)(3)(A)(i) ................................................................................. 14
Fed.R.Civ.P. 26(b)(3)(B) .................................................................................. 2, 16
Fed.R.Civ.P. 26(c)(1) ....................................................................................... 2, 16
Rule 26(b)(3)(A)(ii) ............................................................................................. 14

## <u>STATEMENT OF ISSUE PRESENTED</u>

1.   Whether this Court should grant Defendants' Motion for a Protective Order pursuant to Fed. R. Civ. P. 26(c) and 26(b)(3)(A) and (B) regarding documents protected by the attorney work product doctrine.

Defendants answer "Yes."

Plaintiffs would answer "No."

This Court should answer "Yes."

## <u>INTRODUCTION</u>

This case is one of a number of pending legal matters arising out of Dr. William Husel's treatment of patients at Defendant, Mount Carmel Health System ("MCHS"), prior to his termination in late 2018. Dr. Husel is facing a February 2022 criminal trial on twenty-five counts of first-degree murder arising out of his patient care.

Serious concerns were raised regarding Dr. Husel's use of pain medication when extubating critically ill patients in the Intensive Care Unit in late 2018. In the ensuing weeks, MCHS and its parent company, Defendant, Trinity Health Corporation, began an investigation and made statements to the families of Dr. Husel's patients and the general public. Defendants' statements and their broader media response were made under the direct advice and supervision of counsel, in anticipation of the very litigation that has taken place over the past two and a half years and is still underway. The documents related to Defendants' response are thus protected from discovery under Fed.R.Civ.P. 26(b)(3)(A), which codifies the attorney work product doctrine.

Plaintiffs are now seeking discovery of documents related to Defendants' statements regarding Dr. Husel's patient care, including their media strategy. Plaintiffs apparently hope to locate support for their outrageous allegations that, among other things, Defendants intentionally made "false statements" that "were a component of a false marketing campaign … designed to preserve Defendants' reputation". (Pls' Br., ECF No. 26, at PageID.929.) Plaintiffs have no evidence to support these scurrilous accusations, and the documents sought have no bearing on their claims in any event.

Events have more than borne out Defendants' anticipation of litigation. In addition to the criminal case against Dr. Husel, thirty-four medical malpractice actions were filed against Defendants and Dr. Husel by the families of his deceased patients, and two defamation and

wrongful termination lawsuits are pending against Defendants, including the instant matter. In addition, the Ohio State Medical Board, and the Nursing Board of Ohio, and the Ohio State Pharmacy Board have all conducted investigations, including hearings, into Dr. Husel's conduct.

Defendants respectfully request that the Court issue a protective order under Fed.R.Civ.P. 26(c)(1) shielding those documents from discovery. In the alternative, if the Court orders discovery of those materials, Defendants request that the Court order redactions to protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of Defendants' counsel or other representatives concerning the litigation as required by Fed.R.Civ.P. 26(b)(3)(B).

## **BACKGROUND FACTS**

### *Initial Reports and Preliminary Investigation of Dr. Husel*

In late October 2018, MCHS received a report raising concerns about the prescription of pain medications by William Husel, D.O., for patients in the Intensive Care Units at two MCHS facilities in Columbus, Ohio. In November 2018, while MCHS was still investigating the first report, it received two more reports related to Dr. Husel's pain medication orders. As a result, MCHS broadened its internal investigation into whether Dr. Husel was prescribing ICU patients excessive doses of pain medication, especially fentanyl, during the removal of patients from artificial respirators.

On November 26, 2019, MCHS removed Dr. Husel from providing patient care pending the outcome of its investigation. No later than November 28, 2018, MCHS's in-house counsel, Daniel Hackett, became actively involved in addressing the allegations regarding Dr. Husel's patient care. Linda Ross, in-house counsel for Trinity Health, MCHS' parent company in Michigan, became involved on November 30, 2019.

In part because of concern that litigation would result from the allegations against Dr. Husel

2

and their response, Defendants established an Incident Command Team to develop and implement their response to the allegations regarding Dr. Husel's patient care, including their statements to the families of Dr. Husel's deceased patients and the general public. That team included Mr. Hackett and Ms. Ross, General Counsel for both Defendants. From that date forward, Defendants' efforts were conducted under the supervision of counsel in anticipation that litigation would very likely result. (Exhibits A and B: Affidavits of Mandi Murray and Melissa Lander)

*Defendants' Reports to Authorities and Statements to Patients' Families and the Public*

Based on its ongoing investigation, MCHS summarily terminated Dr. Husel's employment on December 5, 2018 under the terms of its Medical Staff Bylaws. After evaluating their legal and ethical obligations, Defendants also notified the State Medical Board of Ohio, the Ohio Board of Nursing, the Ohio Board of Pharmacy, and the Prosecuting Attorney for Franklin County regarding their investigation. On December 12, 2018, an internal Just Culture review resulted in 18 nursing and pharmacy staff being placed on administrative leave pending completion of the investigation.

The Incident Command Team determined that Defendants should notify the families of Dr. Husel's patients regarding the allegations and the status of Defendants' investigation. After consultation with Defendants' public relations firm and under the direction and supervision of the Incident Command Team, MCHS physicians and administrators conducted telephone calls with the families on two occasions in late December 2018. Concerned that some or all of the families would bring medical malpractice actions against them, Defendants also began preparing a public statement regarding Dr. Husel's actions and their response.

On January 14, 2019, a family of one of Dr. Husel's patients filed a medical malpractice action against him and Defendants. The Complaint contained significant misinformation, prompting Defendants to release a statement to the community describing their investigation into

Dr. Husel's actions. (ECF Doc. #1-3, PageID.161-163: Statement by Richard Gilfillan in Exhibit D to Plaintiffs' Complaint)

MCHS continued its investigation into other ICU patients treated by Dr. Husel, and three more medical malpractice lawsuits were filed. MCHS made additional public statements, including an updated statement to the community noting that "[w]e have now placed 23 colleagues on administrative leave, including members of the management team" on January 30, 2019. (ECF Doc. #1-3, PageID.163-167: Statement to Community on 1/30/19 in Exhibit D to Plaintiffs' Complaint)

On March 13, 2019, Defendants made a statement to the community regarding the additional steps MCHS would be taking as a result of its internal investigation. Among other things, MCHS stated that it "[r]emoved from patient care any colleague who was in any way part of medication administration for an impacted patient" and noted that "[o]ur previous physician, nursing, and pharmacy leaders are on administrative leave while we complete our internal investigation." (ECF Doc. #1-3, PageID.169-170: Statement to Community by Edward Lamb on March 13, 2019 in Exhibit D to Plaintiffs' Complaint)

On July 11, 2019, MCHS announced that it was terminating the employment of a number of employees "including 5 physician, nursing and pharmacy management team members". (ECF Doc. #1-3, PageID.171-173: Statement to Community on July 11, 2019 in Exhibit D to Plaintiffs' Complaint)

*Relevant Procedural History*

Following its own, independent inquiry into Dr. Husel's actions, the office of the Franklin County Prosecuting Attorney submitted charges against him to the Franklin County Grand Jury. In June 2019, the Grand Jury returned indictments against Dr. Husel on 25 counts of first-degree

murder. Husel's criminal trial is set to begin in February 2022.

On December 19, 2019, Plaintiffs filed this action in state court, alleging claims for defamation, wrongful termination, violation of the Lanham Act, and violation of the Ohio Deceptive Trade Practices Act. Defendants removed that action to this Court. (ECF Doc. #1-3: Complaint) Plaintiffs' First Requests for Admissions sought production of, among other things, documents relating to Defendants' statements to the families of Dr. Husel's patients and the general public regarding his care of patients at MCHS. Defendants have objected to three of the fifty-four Requests based on the work product doctrine and Fed.R.Civ.P. 26(b)(3)(A).

In a conference call with counsel on July 13, 2021, Magistrate Judge Jolson ordered the parties to brief the work product doctrine issue in advance of her *in camera* review of the documents at issue. Counsel for the parties agreed that the best vehicle to do so was the instant Motion for Protective Order.

## ARGUMENT

### THIS COURT SHOULD GRANT A PROTECTIVE ORDER REGARDING THE DOCUMENTS AT ISSUE PURSUANT TO THE ATTORNEY WORK PRODUCT DOCTRINE

## I.    Legal Standard

The work product doctrine is a procedural rule of federal law that has codified longstanding practice under the common law. Accordingly, Fed. R. Civ. P. 26 and federal common law govern application of the work product doctrine in this case. *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1993)("Since the instant case is a federal question case by virtue of the appellant's section 1983 claim, we hold that the existence of pendent state law claims does not relieve us of our obligation to apply the federal law of privilege."); Fed. R. Evid. 501. The party objecting to discovery on the basis of the work product doctrine has the burden of establishing that the elements

have been met. In *Toledo Edison Co. v. G.A. Technologies, Inc.,* 847 F.2d 335 (6th Cir. 1988), *superseded on other grounds, Reg'l Airport Auth. V. LFG, LLC,* 460 F.3d 697, 713-14 (6th Cir. 2006), the Sixth Circuit concluded that the party objecting to production of documents on work product grounds is required to make a *prima facie* showing that such documents were prepared in anticipation of litigation. *Id.* at 341. The court concluded that an "undisputed affidavit" submitted by the objecting party that was "specific and detailed" was sufficient to support the objecting party's burden. *Id.*

## II.     The Documents at Issue Are Protected Under the Attorney Work Product Doctrine

Defendants have objected to three of Plaintiffs' fifty-four Requests for Production of Documents on the basis of Fed.R.Civ.P. 26(b)(3)(A) and the attorney work product doctrine. The Requests at issue seek documents regarding Defendants' communications with the families of Dr. Husel's patients who died under his care, documents reflecting Defendants' media strategies and communication plans regarding the allegations about Dr. Husel's actions and Defendants' investigation into his treatment, and documents reflecting Defendants' media strategies or communication plans regarding actions taken by Defendants as a result of its investigation. (Exhibit C: Plaintiffs' Requests for Production of Documents Nos. 37, 40, and 41)[1] The specific Requests are as follows:

> 37. Any and all documents and/or communications (including but not limited to scripts, draft scripts, documents or communications concerning scripts) referring or relating to proposed or actual communications with family members or estate representatives of any of the 35 Patients created on or after December 1, 2018, as well as any audio or written record of such communications (whether verbatim or not).

---

[1] Due to an error by Defendants' counsel, Defendants' responses to Plaintiffs' requests were misnumbered, so that Request No. 37 was listed as No. 38, and so on.

40. All documents reflecting media strategies or other plans for communicating with the public concerning the 35 Patients (whether by name or anonymously) or the Internal Investigation either generally or with respect to specific issues.

41. All documents reflecting media strategies or other plans for communicating with the public concerning actions taken or purportedly taken by Defendants as a result of the Internal Investigation.

Defendants stated the following objection to each of Plaintiffs' Requests: "Defendants additionally object to this request on the ground that it seeks documents protected by the attorney-client privilege and work-product privilege."[2] (Exhibit C: Plaintiffs' Requests for Production 37, 40, and 41)

### A. Scope of the Attorney Work Product Doctrine

Pursuant to Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."[3] Fed. R. Civ. P. 26(b)(1). The scope of discovery is within the sound discretion of the trial court. *Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229, 1240 (6th Cir. 1981). Here, Plaintiffs are seeking privileged documents covered by the attorney work product doctrine.

The attorney work product doctrine is governed by a uniform federal standard set forth in Fed. R. Civ. P. 26(b)(3)(A). This Rule "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles,* 422 U.S. 225, 238 & n.11 (1975). Under Rule 26(b)(3)(A), the work product doctrine broadly applies to "documents and tangible things ... prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3).

---

[2] Defendants will produce the documents in dispute for *in camera* review at the Court's direction in whatever format or formats the Court prefers.

[3] Emphasis supplied throughout unless otherwise noted.

Thus, the work product doctrine "protects … (1) 'documents and tangible things'; (2) 'prepared in anticipation of litigation or for trial'; (3) 'by or for another party or its representative.'" *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (citing *In re Powerhouse Licensing, LLC,* 441 F.3d 467, 472 (6th Cir. 2006)). Here, there is no dispute that the first requirement has been satisfied. The attached affidavits of Defendants' in-house counsel and public relations director establish that the second and third requirements are also satisfied. (Exhibits A and B: Affidavits of Mandi Murray and Melissa Lander)

A document is prepared in anticipation of litigation if the document was prepared or obtained "*because* of the prospect of litigation when the prepare[r] faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh, Pa*., 1994 WL 58999, at *3 (6th Cir. Feb. 25, 1994) (emphasis in original)[4]; *see also Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co*., 951 F. Supp. 679, 686 (W.D. Mich. 1996) ("[a] document is prepared in anticipation of litigation if it is prepared because of the prospect of litigation."). The key consideration for application of the work product doctrine is whether a "document was prepared 'because of' a party's **subjective** anticipation of litigation…and…whether the subjective anticipation was objectively reasonable." *In re Prof'ls Direct, supra*, 578 F.3d at 438 (6th Cir. 2009) (citing *U.S. v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006)).

Even if there is some "business-related" component to the underlying subject of these communications at issue, however, that does not mean the materials were not prepared in anticipation of litigation. *U.S. v. Roxworthy,* 457 F.3d 590, 599 (6th Cir. 2006) ("[a]s other courts have noted, a document can be created for both use in the ordinary course of business and in

---

[4] Unreported cases are attached as Exhibit D.

anticipation of litigation without losing its work product privilege" and further holding that "[t]o the extent that the magistrate judge's findings turned on a requirement that the primary or sole purpose of the KPMG memoranda be in preparation of litigation, we conclude that the magistrate judge relied upon an incorrect interpretation of the law"). *In re Prof'ls Direct, supra,* at 539 (quoting *Roxworthy*, 457 F.3d at 598–99) ("If a document is prepared in anticipation of litigation, **the fact that it also serves an ordinary business purpose does not deprive it of protection**, but the burden is on the party claiming protection to show that anticipated litigation was the 'driving force behind the preparation of each requested document.'")

### B.  The Documents at Issue Were Prepared in Anticipation of Litigation

Plaintiffs have baldly asserted, without evidence, that the documents they requested "were not created in anticipation of litigation, and are not work product." (Pls' Br., ECF No. 26, at PageID.934.) It is unclear how Plaintiffs are in a position to make this claim, however, given that they did not prepare any of the documents, they have not seen the documents, and they have yet to depose a single representative of Defendants. In any event, an analysis of the unique facts of this case, the affidavits of Defendants' employees, and the applicable case law establish that the documents are issue were prepared in anticipation of litigation and are protected from discovery under Fed.R.Civ.P. 26(b)(3)(A).

### 1.  The Affidavits of Mandi Murray and Melissa Lander

Defendants have attached the affidavits of two employees who are deeply familiar with Defendants' response to the allegations regarding Dr. Husel's patient care to assist the Court in application of the work product doctrine. The first is from Mandi Murray, Managing Counsel, Provider Operations and General Counsel for National Ministry for Trinity Health, who was closely involved in addressing the allegations from the earliest days. (Exhibit A: Murray Affidavit) The second is from Melissa Lander, Vice President of Communications for Trinity Health, who

began working with Defendants' counsel on public relations efforts before Defendants made any statements regarding Dr. Husel to his patients' families or the general public. From 2013 through October 2020, Ms. Lander served as Regional Director, Communications & Media for MCHS. (Exhibit B: Lander Affidavit)

As an initial matter, it is undisputed that the documents Plaintiffs seek were prepared during a period when Defendants were conducting an investigation into Dr. Husel's patient care. The affidavits of Ms. Murray and Ms. Lander additionally establish that both in-house and outside counsel were involved from the earliest days of Defendants' response in anticipation of litigation, long before Defendants had a media strategy in place or made statements regarding the situation. Indeed, outside criminal defense counsel was brought in specifically because of concerns of potential criminal charges against Dr. Husel or others at MCHS. Defendants also determined that they were required to report the allegations to regulatory authorities, including the State Medical Board of Ohio, the Ohio Board of Nursing, the Ohio Board of Pharmacy, which they did in mid-December 2018.

With regard to documents relating to communications with the families of Dr. Husel's patients (Request No. 37), all such communications were prepared in anticipation of litigation. Both Ms. Murray and Ms. Lander specifically confirm that this is the case. (Exhibit A: Murray Affidavit, Paragraphs 6-9, 11-14, 16; Exhibit B: Lander Affidavit, Paragraphs 5-10) The fact that all but one of the patients' families brought medical malpractice actions against Dr. Husel and one or more Defendants, and their Complaints contain allegations regarding those communications, stands as compelling evidence that this was the case.

As to documents related to Defendants' communications with the media, including what Plaintiffs refer to as "media strategies or other plans" (Requests Nos. 40 and 41), those were also

produced in anticipation of litigation. That is also confirmed by the testimony of Ms. Murray and Ms. Lander in their affidavits. (Exhibit A: Murray Affidavit, Paragraphs 6-9, 11-14, 16; Exhibit B: Lander Affidavit , Paragraphs 5-10)

Defendants did not make their first public comment regarding Dr. Husel until January 2019, several weeks after they first learned of concerns related to his patient care. By that time counsel had long been involved in advising Defendants, and all statements to the public were formulated at the direction of counsel in anticipation of litigation. Again, the merits of this lawsuit aside, that anticipation was prescient, as those public statements are now the subject of Plaintiffs' defamation claims.

Indeed, Plaintiffs' insistence that documents related to Defendants' communications with the families and media were not prepared in anticipation of litigation is directly at odds with one of the central theories of their Complaint: that Defendants created a "false marketing campaign" calculated to "distance[ ] the Defendants and their management from the events at issue". (Pls' Br., ECF No; 26, at PageID.929–30) While Plaintiffs' allegations in this regard are entirely without basis, to assert such a calculated strategy on the part of Defendants while simultaneously declaring that the campaign was not conducted in anticipation of litigation is self-contradictory and defies common sense.

### 2.  The Documents at Issue Were Not Prepared Solely or Primarily in the Ordinary Course of Business

Defendants' response to the allegations regarding Dr. Husel's patient care did not take place solely or primarily in the ordinary course of business. Those allegations were, and remain, a singular event in the history of MCHS, Trinity Health, and perhaps recent American medical history. Defendants do not consider, and never have considered its response to those allegations to be part of the regular course of its business. For example, it is not part of Defendants' regular

course of business to address allegations that one of their physicians has deliberately and prematurely ended the lives of dozens of its patients, to consult outside counsel regarding their obligation to report potential misconduct by one of their physicians to criminal and regulatory authorities, or to receive subpoenas from prosecutors or criminal defendants related to care at its medical facilities.

Here, the driving force behind the preparation of the documents sought by Plaintiffs was plainly Defendants' anticipation of litigation. All of the documents were prepared after in-house and outside counsel became involved, and after Defendants established the Incident Command Team including the General Counsel for both MCHS and Trinity Health to supervise and direct their response to the allegation regarding Dr. Husel's patient care. The affidavit of Ms. Lander addresses this point directly. She states:

> 11. The level of legal counsel's direct involvement in creating communications related to Dr. Husel's patient care was and continues to be outside of Defendants' normal practice. While legal counsel might on occasion be part of the normal communications process for especially sensitive and public communications, their role is typically a check box in the process versus the active and direct role they have played in this case.
>
> 12. I served as communications lead for all issue management events at MCHS, including a number of events that occurred in 2019. I can attest that the level of legal counsel's direct involvement in response to the allegations regarding Dr. Husel's patient care was unique in comparison to other issues.

(Exhibit B; Lander Affidavit, Paragraphs 11 and 12)

Given the seriousness of the charges against Dr. Husel, which led to unprecedented indictments against him on multiple counts of murder, dozens of lawsuits, and investigations by several regulatory agencies, it is not credible for Plaintiffs to argue that Defendants were acting primarily or exclusively in the ordinary course of business when they formulated and made their statements to the families of Dr. Husel's patients and the general public, and in formulating their

media response generally.

### C. The Documents at Issue Were Prepared by or for Another Party or Its Representative

The heightened work product protection is extended to the tangible and intangible work product of both a party's attorneys and "its other representatives," where that work product reflects those persons' "mental impressions, conclusions, opinions, or legal theories." Fed.R.Civ.P. 26(b)(3)(A). A party's "representatives" include its attorneys, consultants, sureties, indemnitors, insurers, and agents. *Id. See also Toledo Edison*, 847 F.2d at 340. A corporation can only act through its agents, which includes its employees and other representatives. *See Barge v. Jaber*, 831 F. Supp. 593, 601 (S.D. Ohio 1993) ("a corporation is an artificial entity that can only act through its agents"); Black's Law Dictionary (7th ed. 1999) at 64 (defining "agent" to mean "[o]ne who is authorized to act for or in place of another; a representative"). Therefore, because Rule 26(b)(3)(A) provides heightened protection to the thought processes of a party's representatives (including its agents and employees) regarding the anticipated litigation, the mental impressions, conclusions, opinions, or legal theories of Defendants' employees and agents are also entitled to work product protection.

Significantly, work product protection has been specifically held to extend to communications involving counsel and non-lawyer consultants encompassing non-legal matters. When a communication involves both legal and non-legal matters, we "consider whether the predominant purpose of the communication is to render or solicit legal advice." *In re Cnty. of Erie*, 473 F.3d 413, 420 (2d Cir. 2007). "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *Id.* at 419. This predominant purpose "should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the

13

legal authorities **and advice that can be given by a non-lawyer.**" *Id*. at 420-21.

The Sixth Circuit's decision in *Alomari v. Ohio Dep't of Pub. Safety,* 626 F. App'x 558, 571 (6th Cir. 2015) is on point. There, the plaintiffs disputed whether seeking advice for a response to the media is considered "legal advice". The court distinguished the cases relied upon by the plaintiff that deemed an attorney's advice about media relations to be non-legal, finding that in-house counsel was not merely involved in making a business or media decision, but rather sought to advise her client on how to respond to media inquiries regarding an employee's employment. Thus, the Sixth Circuit found, citing to *Dongguk Univ. v. Yale Univ.,* 734 F.3d 113, 122 (2d Cir. 2013), that "[a]dvising a client on how to respond to media inquiries has important legal implications when that client will issue public statements about an employee. *Id.* at 571. (*Dongguk* involved a defamation claim stemming from response to media inquiries). The Court concluded that "[g]iven the potential for legal liability, [the attorneys'] input on how to draft a media response was essential." *Id*. This is directly applicable here, where the affidavits of Ms. Murray and Ms. Lander establish that Defendants consulted public relations experts only after counsel had become involved and under the direct supervision and control of counsel.

Moreover, a number of Courts have held that communications between public relations consultants and in-house attorneys are protected by the attorney-client privilege. For instance, a federal district Court held that confidential communications between lawyers and public relations consultants hired by lawyers to assist them in dealing with the media in high profile cases that are made the for the purpose of giving or receiving advice are protected by the attorney-client privilege. *See In re Grand Jury Subpoenas Dated March 24, 2003*, *Directed to (A) Grand Jury Witness Firm and (B) Grand Jury Witness,* No. M11-189, 2003 WL 21262645, at *6 (S.D.N.Y. June 2, 2003) Similarly, in *F.T.C. v. GlaxoSmithKline,* 294 F.3d 141, 148 (D.C. Cir. 2002), a

14

federal appellate Court held that communications that a drug manufacturer shared with its public relations and government affairs consultants were protected by the attorney-client privilege. Finally, in *In re Copper Market Antitrust Litig*., 200 F.R.D. 213, 219-220 (S.D.N.Y. 2001), another federal district Court held that a public relations firm hired by the company was an agent of the client, and thus communications with both inside and outside counsel were protected by the attorney-client privilege.

### III.    Plaintiffs' Cannot Establish a Substantial Need for the Disputed Documents or Their Inability to Obtain the Information By Other Means to Overrule the Attorney Work Product Doctrine

Plaintiffs have previously argued that, even if the documents at issue are protected by the work product doctrine, the Court should still order their production under Fed.R.Civ.P. 26(b)(3)(A)(i) and (ii), which provide that a party may discover materials otherwise protected if "they are otherwise discoverable under Rule 26(b)(1)" and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *See also Taylor v. Temple & Cutler*, 192 F.R.D. 552, 556-57 (E.D. Mich. 1999). This Rule, however, does not support overruling the work product doctrine in this case.

#### A.  Plaintiffs Cannot Establish a "Substantial Need" for the Work Product Documents

Plaintiffs cannot establish a "substantial need" for the disputed documents because they have no bearing on Plaintiffs' claims. The "substantial need" required by Rule 26(b)(3)(A)(ii) "is not shown by an assertion that such discovery would expedite the case, facilitate the production of proof or narrow the issues." *Employers Ins. of Wausau v. Fed'l Deposit Ins. Corp*., 1986 U.S. Dist. LEXIS 26562 at *11 (E.D. Tenn. April 18, 1986), citing *Brennan v. Engineered Products*, 506 F.2d 299, 303 (8th Cir. 1974). In addition, Fed.R.Civ.P. 26(b)(1) requires that all discovery must

be "relevant to any party's claim or defense". The documents at issue are, by definition, internal drafts and related documents regarding potential statements made by Defendants to the families of Dr. Husel's patients and the general public. Those documents were never shared with third parties and are thus unconnected to Plaintiffs' claims for defamation or wrongful termination. Plaintiffs will presumably assert that the documents are applicable to their claims for false advertising under the Lanham Act and the Ohio Deceptive Trade Practices Act. But those counts rely on the very same allegedly "false statements" to the "public" relied upon in Plaintiffs' defamation claim, specifically that Dr. Husel ordered "excessive" and "potentially fatal" does of pain medication for his patients. (Complaint, Paragraphs 684-688) Whether the statements made by Defendants were false or not is a question of fact and law, and the internal documents of Defendants have no relevance to that determination.  Plaintiffs thus have no need, let alone a "substantial need," for the disputed documents in order to prepare their case.

### B.  Plaintiffs Cannot Establish Their Inability to Obtain the Information By Other Means

Additionally, Plaintiffs cannot establish that they "cannot, without undue hardship, obtain their substantial equivalent by other means" because they have not even attempted to seek the information they believe is contained in the documents by other means. As a general rule, inconvenience and expense do not constitute undue hardship. *Colonial Gas Co. v. Aetna Cas. & Sur. Co.,* 139 F.R.D. 269, 275 (D.Mass.1991). Moreover, "[i]n general, discovery of work-product will be denied if the information is available through depositions." *See Taylor v. Temple & Cutler*, 192 F.R.D. 552, 557 (E.D. Mich. 1999) (citing *In re International Systems and Controls Corp*., 693 F.2d 1235, 1240 (5th Cir. 1982). A party may be required to take the depositions of people who prepared the documents to obtain the information contained in them. *In re Int'l Sys. & Controls Corp. Sec. Litig.,* 693 F.2d at 1241; *Colonial Gas,* 139 F.R.D. at 275.

16

Plaintiffs have not taken a single deposition in this case, nor have they subpoenaed documents from the families of Dr. Husel's patients who participated in the telephone calls with Defendants in December 2018. Plaintiffs have stated their intention to depose a number of Defendants' employees, former, employees, and agents. Plaintiffs must first take those depositions, and seek information and documents from other sources, before they can establish an inability to obtain the information they believe is in the disputed documents by other means.

**IV.  In the Alternative, the Court Should Redact the Disputed Documents to Protect the Impressions, Opinions, and Legal Theories of Counsel**

In the alternative, even if the Court orders discovery of the work product documents, Defendants request that the Court order appropriate redactions to protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of Defendants' counsel.

Fed.R.Civ.P. 26(b)(3)(B) states: "If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed.R.Civ.P. 26(b)(3)(B). As the Sixth Circuit has recognized, "the rule flatly states that the court is not to permit discovery of 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative ....'" *Toledo Edison Co.,* 847 F.2d at 340; *see also Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 509 F.2d 730, 734 (4th Cir. 1974) (opinion work product is never discoverable).

Thus, even if the Court determines that the work product doctrine does not prevent production of the documents requested by Plaintiffs after an *in camera* review, the documents should still be redacted to prevent disclosure of sensitive information disclosing legal advice and litigation strategy.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court issue a protective

order under Fed.R.Civ.P. 26(c)(1) shielding the work product documents from discovery. In the alternative, even if the Court orders discovery of the documents, Defendants request that the Court order redactions to protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of Defendants' counsel or other representatives concerning the litigation as required by Fed.R.Civ.P. 26(b)(3)(B).

Respectfully submitted,

*/s/ Kevin F. O'Shea*
E. Powell Miller (*pro hac vice*)
Kevin F. O'Shea (*pro hac vice*)
**The Miller Law Firm, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
(248) 841-2200
epm@millerlawpc.com
kfo@millerlawpc.com

M. J. Asensio (0030777)
Samuel E. Endicott (0094026)
**Baker & Hostetler LLP**
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Telephone: (614) 228-1541
Facsimile: (614) 462-2616
maseniso@bakerlaw.com
sendicott@bakerlaw.com

*Attorneys for Defendants*

Dated: August 20, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2021, I filed the foregoing document using the electronic filing system which will serve all parties of record.

*/s/ Kevin F. O'Shea*